**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION AT KNOXVILLE**

| | | |
|---|---|---|
| PHILLIS S. BYRGE on behalf of the Estate of REDDIN BYRGE, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | Case No. 3:16-cv-136-TRM-CCS |
| PREMIUM COAL CO., INC., *et al.* | ) ) | |
| *Defendants.* | ) ) | |

_____

## MOTION FOR SUMMARY JUDGMENT
_____

The Plaintiff, Phyllis S. Byrge, moves this court for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to her claim for additional compensation and interest.

There is no genuine dispute that during Mr. Byrge's life, the Defendants did not pay Mr. Byrge monthly monetary benefits under the Black Lung Benefits Act even though a U.S. Department of Labor administrative law judge awarded Mr. Byrge benefits in January 2013. *See* Ex. A, ALJ Award. As 20 C.F.R. § 725.607 makes clear, when monthly monetary benefits are not paid within ten days of being due, the claimant is entitled to twenty percent additional compensation. *See also* 33 U.S.C. § 914(f), *incorporated by reference into* the Black Lung Benefits Act, 30 U.S.C. § 932(a). In addition, Mr. Byrge's estate is entitled to interest on the twenty percent as it accrued each month. *See* 20 C.F.R. § 725.608.

Accordingly, Mrs. Byrge asks for summary judgment as to Defendants' liability in favor of the Estate of Mr. Byrge.

# I. STATEMENT OF MATERIAL FACTS

In support of her motion, Mrs. Byrge provides the following:

1. The Plaintiff, Phillis S. Byrge, is the widow of Reddin Byrge, who worked for Defendant-Employer Premium Coal in Campbell and Anderson Counties, Tennessee.

2. Mr. Byrge filed a claim for benefits under the Black Lung Benefits Act[1] with the U.S. Department of Labor in June 2010. The Director of the Office of Workers' Compensation Programs ("Director, OWCP"), U.S. Department of Labor, administers the Secretary's programs under the Black Lung Benefits Act. *See* 20 C.F.R. § 1.2(f). The Director, OWCP's District Director's office found on April 15, 2011 that Mr. Byrge was entitled to black lung benefits. The Defendants then sought a formal hearing before an administrative law judge ("ALJ").

3. The Defendants did not begin payment of Mr. Byrge's monthly benefits while their appeal was pending at the Office of Administrative Law Judges. As a result, the U.S. Department of Labor's Black Lung Disability Trust Fund—which is administered by the Director, OWCP as trustee—stepped in and made interim payments to Mr. Byrge.

4. On January 16, 2013 following a formal hearing, the ALJ awarded benefits to Mr. Byrge going back to June 2010. *See* Ex. A, ALJ Award. The amount of monthly monetary

---

[1] The Black Lung Benefits Act, 30 U.S.C. §§ 901–44, provides medical and modest monetary benefits for totally disabled coal miners who suffer from black lung disease—a latent, progressive, and irreversible lung disease more formally known as "pneumoconiosis." Although the disease sounds like something from antiquity, recent epidemiological evidence shows a resurgence of even severe forms of the disease. *See, e.g.,* Carrie Arnold, *A Scourge Returns: Black Lung in Appalachia*, 124 ENVTL. HEALTH PERSPS. A13 (2016), *available at* http://ehp.niehs.nih.gov/wp-content/uploads/124/1/ehp.124-A13.alt.pdf. Benefits adjudication is adversarial because the benefits are usually paid by the last solvent company where the miner worked for at least a year.

benefits is set by statute as 37.5% of the base salary of a federal employee at level GS-2, step 1, increased by 50% to account for Mr. Byrge's dependent spouse. *See* 30 U.S.C. § 922. This equates to $938.30 per month during most of Mr. Byrge's eligibility.[2]

5.   On February 14, 2013, the ALJ's decision and order was filed in the office of the District Director. *See* Ex A, ALJ Award (containing District Director's "received" stamp). The District Director's office sent a pay order to the Defendants, dated March 4, 2013. *See* Ex. B, 2013 Pay Order.

6.   The pay order directed the Defendants (1) to begin monthly payments to Mr. Byrge, with the first check to be issued by March 15, 2013, (2) to reimburse the Trust Fund for $21,580.90 of interim benefits payments paid since May 2011, and (3) to pay Mr. Byrge retroactive benefits from June 2010 to March 2011, which totaled $9,383.00. The pay order advised Defendants that late payments could incur an obligation to pay additional compensation of "up to 20% of the amount due" and that "[a]n appeal does not stay this penalty unless an Order staying payments has been issued by the Board or Court." Ex. B, Pay Order 2.

7.   On February 11, 2013, the Defendants appealed the ALJ's award to the U.S. Department of Labor's Benefits Review Board (the Department of Labor's appellate body for black lung benefits claims).

8.   The Defendants refused to pay Mr. Byrge's benefits while its appeal was pending even though they did not receive a stay of the ALJ's award pending appeal. The Trust Fund

_____

[2] In 2014 and 2015, federal employees received 1% raises that increased Mr. Byrge's benefits amount by 1% as well.

accordingly continued to make interim payments to Mr. Byrge.

9.  The Benefits Review Board affirmed the ALJ's award of benefits on February 24, 2014. The Defendants sought reconsideration, which the Board denied on May 28, 2014.

10. The Defendants then petitioned the U.S. Court of Appeals for the Sixth Circuit on July 23, 2014. The Defendants did not begin benefits payments, and the Trust Fund continued to make interim payments.

11. On February 23, 2015—with his claim still pending on appeal—Mr. Byrge passed away.

12. The Sixth Circuit affirmed Mr. Byrge's award of benefits on July 20, 2015. *See Premium Coal Co. v. Director, OWCP* [*Byrge*], 619 F. App'x 447 (6th Cir. 2015). The Defendants did not seek further review of Mr. Byrge's award, and the Sixth Circuit issued its mandate on September 11, 2015.

13. On October 28, 2015, the District Director's office issued a second pay order to the Defendants regarding Mr. Byrge's claim. *See* Ex. C, 2015 Pay Order. The second pay order instructed the Defendants to repay the Trust Fund for, among other things, $52,676.50 in interim payments that the Trust Fund made to Mr. Byrge for the period from June 2010 to January 2015.

14. The Defendants allege that they repaid the $52,676.50 "within 10 (ten) days of their receipt of the Department of Labor's October 28, 2015 letter." Answer ¶ 20. They also allege that another letter, dated December 11, 2015, requested payment of statutory interest on that sum. The Defendants assert that they repaid the interest within ten days of receiving that order. *Id.*

## II. MEMORANDUM OF POINTS AND AUTHORITIES

15. Summary judgment is appropriate where there is "no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

16. The below memorandum explains why Mrs. Byrge's present motion meets the standard of Rule 56 and summary judgment as to her claim for additional compensation and interest should be granted.

### A.  Cause of Action and Jurisdiction

17. The Defendants failed to pay Mr. Byrge his benefits within ten days of being due from February 2013, when the ALJ's order became effective, until February 2015, when Mr. Byrge passed away.

18. The Black Lung Benefits Act, 30 U.S.C. § 932(a), which incorporates by reference a provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 914(f), provides the cause of action. The provision states that "[i]f any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof." 33 U.S.C. § 914(f). The additional compensation is waived only if "an order staying payment has been issued by the Board or court." *Id.*

19. The Department of Labor's regulations implementing the Black Lung Benefits Act similarly state that if benefits "are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there will be added to such unpaid benefits an amount equal to 20 percent thereof." 20 C.F.R. § 725.607(a).

20. The Defendants also owe interest on the unpaid additional compensation. Specifically,

5

the Defendants owe interest at the rate provided by 26 U.S.C. § 6621 running from the date that the right to each month's 20% additional compensation first arose. *See* 20 C.F.R. § 725.608(a)(3).

21. The Court has jurisdiction under 33 U.S.C. § 921(d), *incorporated by reference into* 30 U.S.C. § 932(a). That provision provides for enforcement of final awards in Federal district court:

> If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred . . . . If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

33 U.S.C. § 921(d).

22. This Court has subject matter jurisdiction because this action arises under laws of the United States. 28 U.S.C. § 1331.

## B. Monthly Payments Were Due on the Fifteenth of Every Month Beginning in March 2013.

23. The regulations establishing due dates for payments under the Black Lung Benefits Act are set forth at 20 C.F.R. § 725.502. The first question is whether an "effective order" is in place: "[b]enefits shall be considered due after the issuance of an *effective order* requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court." *Id*. § 725.502(a)(1) (emphasis added).

24. The initial award of benefits by the District Director does not immediately create an effective order. Instead, the losing party has thirty days to request a hearing before an

6

ALJ pursuant to § 725.419.  In this case, the Defendants did request a hearing.  Thus, the April 15, 2011, finding of the District Director did not put in place an effective order.  *Id*. § 725.502(a)(2).

25.  The decision of an ALJ, on the other hand, "becomes effective when it is filed in the office of the district director."  *Id*.  In this case, the January 16, 2013, decision of the ALJ was filed at the District Director's office on February 14, 2013.  *See* Ex A, ALJ Award (containing District Director's "received" stamp).  From that date onward, an "effective order" was in place, "notwithstanding the pendency of a motion for reconsideration before an administrative law judge or an appeal to the Board or court."  *Id*.  § 725.502(a)(1).

26.  In other words, the order remained effective despite the subsequent appeals to the Benefits Review Board and the Sixth Circuit.  Pursuant to the regulations, an order can be "effective" before it becomes "final."  The Department of Labor has adopted this interpretation of the regulations in prior litigation of a case similar to Mrs. Byrge's, and the court in that case deferred to the agency's reasonable interpretation:

> The Director argues that a plain reading of this language, and similar language in other relevant regulations, establishes that an ALJ's decision *shall* become effective at the time it is filed and automatically becomes final unless timely appealed.  According to the Director, the concepts of effectiveness and finality are distinct; although an appeal delays an order's finality, it does not prevent the order from becoming effective.
>
> The Director's interpretation is reasonable, and the Court adopts it.

*Nowlin v. E. Associated Coal Corp.* (*Nowlin II*), 331 F. Supp. 2d 465, 472 (N.D. W. Va. 2004) (emphasis in original).  This interpretation can also be found in the preamble to

revisions published in December 2000. *See Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended*, 65 Fed. Reg. 79,920, 80,010–11.

27. An effective order triggers monthly due dates for benefit payments:

> While an effective order requiring the payment of benefits remains in effect, monthly benefits, at the rates set forth in § 725.520, shall be due on the *fifteenth day of the month* following the month for which the benefits are payable. For example, benefits payable for the month of January shall be due on the fifteenth day of February.

20 C.F.R. § 725.502(b)(1). In this case, the first month for which benefits were payable was February 2013. As a result, the first due date for monthly payments was March 15, 2013.

28. The District Director's March 4, 2013 pay order made this clear for the Defendants. It said: "Premium Coal Company, Inc. shall provide monthly benefits to the claimant beginning February 2013 (check to be issued March 15, 2013) at the rate of $983.30." *See* Ex. B, 2013 Pay Order.

29. The Defendants were thus under legal obligation to make monthly payments to Mr. Byrge beginning in March 2013. As the Defendants themselves admit in their Answer, they failed to do so. *See* Answer ¶ 15.

30. The obligation to make monthly payments continued until Mr. Byrge's death in February 2015. The effective order became final, in turn, when the Sixth Circuit issued its mandate on September 11, 2015. At that time, the Defendants were delinquent on twenty-four months of regular payments, amounting to $22,650.90.

## C. An Additional Lump-sum Reimbursement for Back Benefits Was Due on April 3, 2013.

31. The regulations also provide for the District Director to charge retroactive payments after an effective order goes into effect:

8

> Within 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order, in addition to any interest payable for such periods (see § 725.608), and shall so notify the parties.

*See* 20 C.F.R. § 725.502(b)(2). This computation is necessary because a disabled miner is eligible to recover benefits dating to earliest evidence of his disability due to black lung. 20 C.F.R. § 725.503(b). As a result, a successful claim for benefits often results in several years of retroactive benefits.

32. The March 4, 2013 pay order directed the Defendants to reimburse (1) Mr. Byrge for ten months of retroactive benefits and (2) the Trust Fund for twenty-two months of interim benefits. In total, these mandatory reimbursements amounted to an additional $30,025.60.[3]

33. The regulations provide that: "[b]enefits and interest payable for such periods shall be due on the *thirtieth day* following issuance of the district director's computation." 20 C.F.R. § 725.502(b)(2). Thus, the lump-sum payment became due on April 3, 2013, thirty days after the pay order issued on March 4.

34. *Nowlin II* confirms this interpretation of the regulations as well. In that case, the plaintiff argued that, since the District Director had "computed payments on June 1, 1999," the operator's payments "became due on July 1, 1999." 331 F. Supp. 2d at 471. The court agreed, holding that "[defendant's] alternative arguments are based on the faulty

---

[3] The March 2013 pay order appears to have double-counted the month of February 2013, charging it both as both a prospective monthly benefit and a retroactive reimbursement. This double-counting is evident in comparison to the total payment on the October 28, 2015, pay order. For purposes of this Motion, Mrs. Byrge excludes February 2013 from the Trust Fund reimbursement request.

assumption that penalties can only be assessed after an award becomes final." *Id*. at 472.

### D. The Defendants Are Responsible for an Additional 20% Compensation Because They Missed Every Required Payment.

35. The Defendants missed every required payment during Mr. Byrge's life. In fact, in their Answer to Mrs. Byrge's Complaint, the Defendants admit all the material facts relating to their delinquent payments:

> Defendants admit that they did not pay Reddin Byrge's benefits while their appeal was pending. Defendants admit that they did not apply for or receive a stay of the ALJ's decision and order pending appeal.

Answer ¶ 15.

36. Their defense in this case is a legal one, not a factual one. In her Complaint, Mrs. Byrge specifically asserted that "[f]rom February 2013 until February 2015, the defendants did not pay Mr. Byrge his benefits within 10 days of being due." Complaint ¶ 23. In response, the Defendants stated, "Paragraph 23 is denied. Defendants do not believe that any benefits were 'due.'" Answer ¶ 23.

37. Thus, the Defendants do not dispute the material fact that they missed every payment. Instead, they appear to argue, as a matter of law, that no payments were "due." Their argument is without merit, as explained in ¶¶ 23–34 *supra*, and this Court can appropriately resolve this legal question via summary judgment.

38. Because the Defendants refused to pay Mr. Byrge while their appeal was pending, the Trust Fund continued to pay Mr. Byrge. Consequently, once Mr. Byrge's award was final, the Trust Fund sought reimbursement from the Defendants. *See* Ex. C, 2015 Pay Order.

39. Even if the Defendants repaid the Trust Fund in October or November of 2015, *see* Answer ¶ 20, this does not change the fact that they failed to pay Mr. Byrge during his

life as his benefits became due.

40.    Because it is an uncontested fact that the Defendants missed twenty-five payments from

February 2013 to February 2015, and the lump-sum payment for back benefits that was

due on April 3, 2013—as a matter of law—the Defendants owe an additional 20%

compensation on the total of their missed payments.

41.    The entitlement of Mr. Byrge's estate to 20% additional compensation arises from § 14(f)

of the Longshore and Harbor Workers' Compensation Act.  This statute provides:

> If any compensation, payable under the terms of an award, is not paid
> within ten days after it becomes due, there shall be added to such unpaid
> compensation an amount equal to 20 per centum thereof, which shall be
> paid at the same time as, but in addition to, such compensation, unless
> review of the compensation order making such award is had as provided in
> section 921 [33 U.S.C. § 921] of this title and an order staying payment
> has been issued by the Board or court.

33 U.S.C. § 914(f).

42.    The Black Lung Benefits Act incorporates that provision by reference.  30 U.S.C. §

932(a).  The Department of Labor's implementing regulations make clear that § 914(f)

applies in the black lung benefits context:

> If any benefits payable under the terms of an award by a district director (§
> 725.419(d)), a decision and order filed and served by an administrative
> law judge (§ 725.478), or a decision filed by the Board or a U.S. court of
> appeals, are not paid by an operator or other employer ordered to make
> such payments within 10 days after such payments become due, there will
> be added to such unpaid benefits an amount equal to 20 percent thereof,
> which must be paid to the claimant at the same time as, but in addition to,
> such benefits, unless review of the order making such award is sought as
> provided in section 21 of the LHWCA and an order staying payments has
> been issued.

20 C.F.R. § 725.607(a); *see also* 20 C.F.R. § 725.530(a).

43.    Thus, the 20% additional compensation attaches as soon as the ten-day grace period

expires.   The regulation confirms that the additional compensation comes into play

"unless . . . an order staying payments has been issued." The Department of Labor has adopted this interpretation as well. It repeated the following language in both pay orders issued to the Defendants:

> Please be advised that by failing to initiate benefits and reimburse the Black Lung Disability Trust Fund within 10 days of the date payment is due, the employer may be subject to a penalty of up to 20% of the amount due. Further, failure to pay benefits as ordered may result in enforcement of the final award in Federal District Court (20 CFR 725.604). *An appeal does not stay this penalty unless an Order staying payments has been issued by the Board or Court.*

Ex. B, 2013 Pay Order 2; Ex. C, 2015 Pay Order 2 (footnotes omitted).

44.   As calculated by the District Director's office in its October 28, 2015, pay order, the total amount of benefits payable to Mr. Byrge during this period was $52,676.50. This total is the sum of (1) $30,025.60 in retroactive payments from June 2010 to January 2013 and (2) $22,650.90 in missed monthly payments from February 2013 to January 2015. The Defendants do not dispute the fact that the pay order required this level of reimbursement. Answer ¶ 24. The table available at Exhibit D also confirms this amount.

45.   The 20% additional compensation that Mr. Byrge's estate is entitled to is therefore $10,535.30, which is 20% of $52,676.50. The Defendants do not dispute this calculation, although they do dispute the legal question of Mr. Byrge's entitlement. Answer ¶ 25.

46.   The fact that the Trust Fund made interim payments to Mr. Byrge while his case was pending does not affect the Defendants' legal responsibility to pay the 20% additional compensation. As 20 C.F.R. § 725.607(b) provides, if "benefit payments are made by the fund, the eligible claimant shall nevertheless be entitled to receive such additional compensation to which he or she may be eligible under paragraph (a) of this section,

which respect to all amounts paid by the fund on behalf of such operator."

47.  The court in *Nowlin II* specifically addressed the impact of payment by the Trust Fund. It concluded that the "unambiguous language" of the regulations "disposes of any assertion that the twenty percent penalty was not intended to apply whenever the Trust Fund makes payments on an operator's behalf." *Nowlin II*, 331 F. Supp. 2d at 474.

48.  In the face of these straightforward legal obligations, the Defendants make the vague assertion that 20 C.F.R. § 725.607(b) is "arbitrary, capricious and an abuse of discretion and not in accordance with law." Answer at 6.

49.  The coal operator in *Nowlin II* made a similar argument. In that case, the employer insisted that "unpaid compensation," within the meaning of 33 U.S.C. § 914(f), cannot include situations where the miner has received compensation from the Trust Fund. In particular, since the Longshore Act does not provide for a Trust Fund, "claimants could possibly go unpaid" in Longshore cases. 331 F. Supp. 2d at 475. The Employer argued that this distinction between the two Acts demonstrates that the Department of Labor has adopted an unreasonable statutory construction.

50.  Parties seeking to challenge a regulation promulgated under an agency's rulemaking authority bear a heavy burden. Courts must defer to an agency's reasonable interpretation of the underlying statute: "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

51.  This principle of deference is especially powerful where the statute includes a broad grant of rulemaking authority. "[E]xpress congressional authorizations to engage in the process of rulemaking" are a "very good indicator of delegation meriting *Chevron*

13

treatment." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

52.　The Black Lung Benefits Act empowers the Secretary of Labor "to issue such regulations as each deems appropriate to carry out the provisions of this subchapter." 30 U.S.C. § 936(a). General language of this sort creates a presumption in favor of the agency's position:

> Where the empowering provision of a statute states simply that the agency may "make . . . such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation."

*Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 369 (1973) (quoting *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 280-81 (1969)).

53.　In this case, there is no conceivable argument that could overcome this strong presumption. Congressional intent, sound policy, and prior case law all support the rule established by 20 C.F.R. § 725.607(b). In creating the Trust Fund, "Congress intended to 'ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operators' mines to the maximum extent feasible.'" *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 693 (7th Cir. 1987) (quoting S. Rep. No. 209, 95th Cong., 1st Sess. 9 (1977)).

54.　Thus the Secretary of Labor promulgated the rule in question "to encourage the prompt payment of benefits by operators whether or not additional proceedings are pursued." *Black Lung Benefits Program: Standards for Processing, Adjudication, and Payment of Claims* 43 Fed. Reg. 36,772, 36,815 (Aug. 18, 1978). As the Director, OWCP, explained in the *Nowlin* case:

> Section 725.607 seeks to encourage operators to comply with effective awards pending appeal, thereby protecting the Trust Fund from being used

14

as an operator-surrogate while an award is contested. Operator non-compliance with effective awards has been a pervasive problem under the BLBA and has contributed significantly to the Trust Fund's multi-billion dollar debt.

Br. of Amicus Curiae, Director, OWCP, *Nowlin II*, 331 F. Supp. 2d at 465 (No. 1:02 CV 51), 2003 WL 24859899.  The reason that operator noncompliance has contributed to the Trust Fund's debt is that, sometimes, awards of benefits are vacated on appeal.  As the Department of Labor has stated, "[i]nitial awards which were eventually overturned would become overpayments; recovering overpayments from a largely elderly and unemployed population was problematic at best."  65 Fed. Reg. at 80,011.  The Department of Labor has made the policy decision that—following an ALJ's award—operators should begin making payments and then bear part of the risk and burden of trying to collect any overpayments that may occur.

55. Unsurprisingly, the court in *Nowlin II* accepted this compelling logic: "because it furthers the compensation goal of the original statutory provision and the BLBA's goal of imposing primary liability on operators when possible, § 725.607 is a valid, reasonable exercise of the Secretary's discretionary rulemaking authority."  *Nowlin II*, 331 F. Supp. 2d at 476.  The court then ordered the Employer to pay the plaintiff the requisite additional compensation.  *Id.*

56. In short, the Defendants' arguments are unavailing.   It is not disputed that the Defendants were delinquent on $52,676.50 of payments.  The regulations thus clearly require that Defendants pay 20% additional compensation on those payments, which amounts to $10,535.30.  The regulations are reasonable and must be upheld.

**E.  The Defendants Also Owe Interest on the Unpaid Additional Compensation.**

57. Furthermore, Mr. Byrge's estate is entitled to interest on the unpaid additional

compensation: "[i]n any case in which an operator is liable for the payment of additional compensation (§ 725.607), the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose." 20 C.F.R. § 725.608(a)(3).

58. Again, the Defendants do not dispute any material fact necessary to decide this question of law. Answer ¶¶ 27–29.

59. The right to additional compensation arises ten days after the payment becomes due. *See supra* ¶¶ 41–43. Payments were due on the fifteenth of each month from March 2013 to February 2015. *See supra* ¶¶ 23–30. Interest on those payments thus began to accrue on the twenty-fifth of each month from March 2013 to February 2015.

60. A lump-sum reimbursement was due on April 3, 2013. *See supra* ¶¶ 31–34. Interest on that payment thus began to accrue on April 13, 2013.

61. This straightforward interpretation is confirmed by another decision from a U.S. District Court from West Virginia with facts directly analogous to the instant case:

> Inasmuch as monthly benefits are due on the fifteenth day of the next month, 20 C.F.R. § 725.502(b)(1), [the Plaintiff's] January benefits became due on February 15, 2011. In addition, benefits for periods prior to the effective date of the order—i.e., back benefits—are due 30 days after the district director issues a computation of those benefits. 20 C.F.R. § 725.502(b)(2). Inasmuch as OWCP issued its calculation letter on February 8, 2011, [the Plaintiff's] back benefits of $30,479.10 became due on March 10, 2011. Because the benefits were not paid by [the Defendant] by their respective due dates, the 20% additional compensation began to accrue *ten days thereafter*.

*Hudson v. Pine Ridge Coal Co., LLC*, Civ. No. 2:11-00248, 2012 WL 386736, at *6 (S.D. W. Va. Feb. 6, 2012).

62. *Hudson* concluded that the Plaintiff was "entitled to an order enforcing his right to an additional 20% of all overdue payments, *plus interest*, pursuant to section 14(f)." *Id.* at

16

*7 (footnotes omitted).

63. Confronted again with unambiguous regulations and adverse court rulings, the Defendants make the unsubstantiated claim that "[t]o the extent the Department of Labor's regulation requires the payment of prejudgment interest, such regulation is arbitrary, capricious and an abuse of discretion and not in accordance with law." Answer at 6.

64. This argument is also meritless. First, the regulation does not require the payment of prejudgment interest. Prejudgment interest is "interest accrued either from the date of the loss or from the date when the complaint was filed up to the date the final judgment is entered." "Interest," *Black's Law Dictionary* (10th ed. 2014).

65. In the context of black lung benefits, prejudgment interest would refer to interest accruing from the date the claimant became eligible for benefits—that is, the date of the earliest evidence of disabling black lung. 20 C.F.R. § 725.503(b); *see also Peabody Coal Co. v. Blankenship*, 773 F.2d 173, 174, 75 (7th Cir. 1985) (describing "prejudgment interest" as "interest on claimant's award . . . computed from April 1, 1977, the date of claimant's eligibility for benefits").

66. Mr. Byrge was eligible for benefits in June 2010 when he filed his claim. But Mrs. Byrge demands interest starting only from the date when Mr. Byrge's first benefits were due under the ALJ's award: March 25, 2013. *See supra* ¶ 59.

67. Thus, Mrs. Byrge demands not *pre*judgment interest but rather *post*judgment interest.

68. Perhaps the Defendants are trying to suggest that interest before all appeals have been exhausted somehow amounts to prejudgment interest. Such a position would bear no relation to how the term is used in practice and should also be rejected. For example,

17

under the Federal Rules of Civil Procedure "judgment" refers to the trial court's final word in a case, not an appellate body's. *See* Fed. R. Civ. P. 54 (defining "judgment" as "a decree and any order *from which an appeal lies*").

69. Finally, even if this Court were to find that interest accruing after the ALJ's judgment constitutes prejudgment interest, some forms of prejudgment interest may be permissible in the context of black lung benefits claims. In *Reich v. Youghiogheny & Ohio Coal Co.*, 66 F.3d 111, 117 (6th Cir. 1995), the Sixth Circuit held that coal operators could be liable for prejudgment interest arising from the Trust Fund's expenditures on medical benefits for treatment of black lung and stated

> The Black Lung Benefits Act is clearly a broad remedial statute. Courts have generally been more willing to award prejudgment interest in claims brought under remedial statutes.
> . . .
> Congress and the agency responsible for administering the Black Lung Benefits Act have decided that, as among the disabled miner, the coal mine operator and the Government, the operator should be the one to bear the cost of the delay attributable to the operator's questioning or contesting a[] . . . claim for which it is ultimately determined to be responsible. The agency's regulations and their administration are within the mandates of the Act.

*Id.* (internal citations omitted).

70. The Defendants thus owe interest to be calculated on the date of entry of judgment by this Court upon the $10,535.30 in additional compensation as it grew month by month, and continuing until the judgment is paid.

71. As of today (August 17, 2016) the interest due amounts to $976.30. *See* Ex. D, Additional Compensation Calculation.

## F. Mrs. Byrge's Claims Are Both Ripe and Timely.

72. The Defendants make three final contentions regarding timing: "[p]laintiff's claims are

18

either [1] premature because she has not exhausted her administrative remedies or [2] moot because the amounts were timely paid or [3] are barred by the applicable statute of limitations."  Answer at 5.

73.   Each contention is without merit as a matter of law.

74.   First, Mrs. Byrge is under no obligation to exhaust any administrative remedy.  Section 21(d) of the Longshore Act provides a freestanding right of action for claimants to enforce a final award of benefits, including the 20% additional compensation, in Federal district court:

> If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred.

33 U.S.C. § 921(d), *incorporated by reference into* 30 U.S.C. § 932(a).

75.   Multiple courts have held that plaintiffs may use section 921(d) to obtain an award of additional compensation.  In *Nowlin v. Eastern Associated Coal Corp.* (*Nowlin I*), the court held that "a § 914(f) penalty can be assessed in an action brought under either § 918 or § 921. Nowlin's action, therefore, is not barred simply because she brought it under § 921." 266 F. Supp. 2d 502, 506 (N.D.W. Va. 2003) (*citing Reid v. Universal Mar. Serv. Corp.*, 41 F.3d 200, 201 (4th Cir. 1994)).  *See also Kinder v. Coleman & Yates Coal Co.*, 974 F. Supp. 868, 879 (W.D. Va. 1997) ("[A]n employee who effectively waives his section 918(a) rights would still have two years after an award becomes final to seek enforcement pursuant to section 921(d).").

76.   In addition, a plaintiff need not seek a supplementary order from the District Director prior to bringing suit under section 921(d).  *Combs v. Elkay Mining Co.*, 881 F. Supp. 2d

19

728, 737 (S.D. W. Va. 2012).

77. The Defendants' second contention—that the lawsuit is "moot because the amounts were timely paid"—simply rephrases their denial that Mrs. Byrge is entitled to additional compensation. For the reasons set forth in ¶¶ 35–56, *supra*, the Defendants are incorrect as a matter of law.

78. Finally, Mrs. Byrge's claim is not barred by any statute of limitations. Section 921(d) contains no explicit statute of limitations. *See* 33 U.S.C. § 921(d). In searching for a statute of limitations to apply in this context, courts have consistently found that "a federal court should borrow the applicable state's general statute of limitations." *Nowlin I*, 266 F. Supp. 2d at 505; *see also Cassell v. Taylor*, 243 F.2d 259, 261 (D.C. Cir. 1957); *Kinder*, 974 F. Supp. at 879.

79. Mr. Byrge's claim arose in the State of Tennessee. Tennessee's statutes of limitations are codified in Title 28 of the Tennessee Statutes. Chapter 3, Subsection 110 of that Title begins as follows:

> (a) The following actions shall be commenced within ten (10) years after
> the cause of action accrued:
> (1) Actions against guardians, executors, administrators, sheriffs,
> clerks, and other public officers on their bonds;
> (2) Actions on judgments and decrees of courts of record of this or any
> other state or government; and
> (3) *All other cases not expressly provided for.*

Tenn. Code. Ann. § 28-3-110 (2016). Therefore, the "general or 'catch-all,'" *Kinder*, 974 F. Supp. at 870, statute of limitations in Tennessee is ten years.

80. The statute of limitations for filing this § 921(d) additional compensation claim began running on September 11, 2015 when the Sixth Circuit issued its mandate in Mr. Byrge's claim. As stated in the Sixth Circuit's internal operating procedures, "[a] mandate is the

20

Case 3:16-cv-00136-CCS   Document 17   Filed 08/17/16   Page 20 of 22   PageID #: 62

document by which this court relinquishes jurisdiction and authorizes the originating court or agency to enforce this court's judgment." 6th Cir. I.O.P. 41(a)(1). At that time, barring a writ of certiorari to the U.S. Supreme Court, it was clear that the Defendants had exhausted their appeals. *Cf. Nowlin I*, 266 F. Supp. 2d at 505. ("An effective award becomes final thirty days after it is filed in the District Director's office, or after an aggrieved party has exhausted its appeals.").

81. Thus, under Tennessee law, Mrs. Byrge had until September 11, 2025 to file a timely action under 33 U.S.C. § 921(d).

82. Mrs. Byrge filed this action at this Court on March 21, 2016. Therefore, her claim is timely.

CONCLUSION

Mr. Byrge's estate is plainly entitled to additional compensation of 20% of his monthly benefits that the Defendants failed to pay him. Because Mr. Byrge's right to this money began accruing on March 15, 2013, his estate is also entitled to increasing interest as the amount of additional compensation grew month by month during Mr. Byrge's life.

The Defendants made the business decision related to their appeals of Mr. Byrge's award of benefits to incur additional liability to avoid the risk and burden of collecting from the Byrges any overpayment that might arise if their appeal were successful. However, no overpayment arose because Mr. Byrge's award was affirmed repeatedly. The Defendants must now face the consequences of their business decision and pay Mr. Byrge's estate the additional compensation provided by the statute.

WHEREFORE, the Court should enter summary judgment holding that the Defendants are liable to Mr. Byrge's estate for additional compensation and interest payments.

21

Case 3:16-cv-00136-CCS   Document 17   Filed 08/17/16   Page 21 of 22   PageID #: 63

Although the 20% amount is a sum certain ($10,535.30), the interest calculation is a bit complicated because the time periods during which interest has accumulated vary month to month from February 2013 to February 2015 as the additional compensation amount grew. *See* Ex. D, Additional Compensation Calculation. Following judgment regarding liability, the interest can be worked out among the parties or, if necessary, litigated before your Honor.

Respectfully submitted,

/s/ Evan Smith _____
EVAN B. SMITH (Ky. #95243)
APPALACHIAN CITIZENS' LAW CENTER
317 Main Street
Whitesburg, Kentucky 41858
(606) 633-3929
evan@appalachianlawcenter.org
*Attorney for Phillis S. Byrge*

## CERTIFICATE OF SERVICE

I certify that on August 17, 2016 the foregoing document was filed via ECF, which will electronically serve the Defendants via their registered attorneys.

/s/ Evan Smith_____
EVAN B. SMITH

22