UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PHILLIS S. BYRGE, on behalf of the Estate of )
REDDIN BYRGE,                                )
                                             )
                   Plaintiff,                )
                                             )
v.                                           )        No. 3:16-CV-136-CCS
                                             )
PREMIUM COAL CO. INC. *et al.,*              )
                                             )
                   Defendants.               )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 16].

Now before the Court is the Plaintiff's Motion for Summary Judgment [Doc. 17]. The

Defendants filed a Response [Doc. 19], and the Plaintiff filed a Reply [Doc. 22]. The parties have

also filed a number of supplemental notices [Docs. 27, 29, 30], which the Court has considered.

The parties appeared before the Court on March 2, 2017, for a motion hearing. Attorney Evan

Smith appeared on behalf of the Plaintiff. Attorneys Mark Solomons, Laura M. Klaus, and Richard

Solomons appeared on behalf of the Defendants. Accordingly, and for the reasons more fully

explained below, the Court hereby **GRANTS** the Plaintiff's Motion for Summary Judgment [**Doc.**

**17**].

## I.    BACKGROUND

As an initial matter, the Court notes that the Plaintiff's Motion contains a section of material

facts. [Doc. 17 at 2]. The Defendants did not specifically respond to the Plaintiff's statement of

material facts, but it appears to the Court that there is no dispute regarding the administrative

procedural history of this case. Thus, the following facts are taken from the Plaintiff's statement of material facts, unless otherwise noted.

The Plaintiff, filing on behalf of the estate, is the widow of Reddin Byrge, who worked for Defendant Premium Coal Company, Inc., ("Premium Coal") in Campbell and Anderson Counties in Tennessee. In June 2010, Mr. Byrge filed a claim for benefits pursuant to the Black Lung Benefits Act with the United States Department of Labor. The Director of the Office of Workers' Compensation Program administers the program. On April 15, 2011, the district director's office found that Mr. Byrge was entitled to black lung benefits. The Defendants sought a formal hearing before an administrative law judge ("ALJ").

The Defendants did not begin payment of Mr. Byrge's monthly benefits while the appeal was pending with the ALJ. As a result, the Department of Labor's Black Lung Disability Trust Fund ("Trust Fund") made interim payments to Mr. Byrge. On January 16, 2013, following a formal hearing, the ALJ awarded benefits to Mr. Byrge dating back to June 2010. The ALJ's Order was received by the district director on February 14, 2013. [Doc. 17-1].

In a letter dated March 4, 2013, to Defendant Premium Coal, the Office of Workers' Compensation stated, in relevant part, as follows:

> In accordance with the Decision and Order – Awarding Benefits issued by Daniel F. Solomon dated January 16, 2013[,] Premium Coal Company, Inc. shall provide monthly benefits to the claimant beginning February 2013 (check to be issued March 15, 2013) at the rate of $938.30. The operator shall reimburse the Black Lung Disability Trust Fund the sum of $21,580.90 for interim benefits paid to the claimant from April 2011 through February 2013.
>
> . . .
>
> Premium Coal Company, Inc. shall also pay the claimant retroactive benefits from June 2010 through March 2011, in the amount of $9,383.00.
>
> . . .

2

> Please be advised that by failing to initiate benefits and reimburse the Black Lung Disability Trust Fund within 10 days of the date payment is due, the employer may be subject to a penalty of up to 20% of the amount due. (In a footnote, the letter continues: See 20 CFR 725.607 and Section 14(f) of the Longshoremen's and Harbor Workers' Compensation Act as incorporated by Section 422(a) of the Black Lung Benefits Act. Such benefits are due within the 30 day period following the date of the decision in this case). Further, failure to pay benefits as ordered may result in enforcement of the final award in Federal District Court (20 CFR 725.604). An appeal does not stay this penalty unless an Order staying payments has been issued by the Board or Court.

[Doc. 17-2]. On February 11, 2013, the Defendants appealed the ALJ's award to the Department of Labor's Benefits Review Board. During this appeal, the Defendants did not pay Mr. Bryge's benefits and did not receive or request a stay.[1] The Trust Fund continued to make interim payments to Mr. Byrge.

On February 24, 2014, the Benefits Review Board affirmed the ALJ's award of benefits. The Defendants sought reconsideration, but the Board denied on May 28, 2014. Later, on July 23, 2014, the Defendants petitioned the United States Sixth Circuit Court of Appeals. On February 23, 2015, while the claim was still pending, Mr. Byrge passed away. Subsequently, on July 22, 2015, the Sixth Circuit affirmed Mr. Byrge's award of benefits. The Sixth Circuit issued its mandate on September 11, 2015.

The Office of Workers' Compensation sent Defendant Premium Coal a letter dated October 28, 2015, stating that "in accordance with the Decision and Order – Awarding Benefits issued by the Court of Appeals dated July 22, 2015, the operator shall also reimburse the Black Lung Disability Trust Fund the sum of $52,676.50 for interim benefits paid to the claimant from June 2010 through January 2015." [Doc. 17-3]. The letter continues:

---

[1] The Plaintiff's statement of material facts submits that the Defendants did not receive a stay. At the hearing, however, the Defendants acknowledged that they did not request a stay.

3

Please be advised that by failing to initial benefits and reimburse the Black Lung Disability Trust Fund within 10 days of the date payment is due, the employer may be subject to a penalty of up to 20% of the amount due. (In a footnote, the letter continues: See 20 CFR 725.607 and Section 14(f) of the Longshoremen's and Harbor Workers' Compensation Act as incorporated by Section 422(a) of the Black Lung Benefits Act. Such benefits are due within the 30 day period following the date of the decision in this case). Further, failure to pay benefits as ordered may result in enforcement of the final award in Federal District Court (20 CFR 725.604). An appeal does not stay this penalty unless an Order staying payments has been issued by the Board or Court.

The Defendants state that they repaid $52,676.50 within the ten days of their receipt of the October 28, 2015 letter.

On March 21, 2016, the Plaintiff initiated [Doc.1] the instant action. The Plaintiff alleges that the Defendants refused to pay Mr. Byrge's benefits while the appeal was pending even though the Defendants did not receive a stay of the ALJ's Order pending appeal. The Plaintiff states that the Trust Fund stepped in and made interim payments to Mr. Byrge. The Plaintiff alleges that from February 2013 until February 2015, the Defendants did not pay Mr. Byrge his benefits within 10 days of being due. The Plaintiff requests 20% additional compensation on the unpaid benefits, which results in $10,535.30 (20% of $52,675.50). Further, the Plaintiff argues that the Defendants owe interest on the $10,535.30.

The Plaintiff has now moved for summary judgment.

## II.    POSITIONS OF THE PARTIES

The Plaintiff argues that the Defendants failed to pay Mr. Byrge his benefits within ten days of being due from February 2013, when the ALJ's Order became effective, until February 2015, when Mr. Byrge passed away. The Plaintiff asserts that the ALJ's Order became effective when it was filed with the District Director on February 14, 2013. The Plaintiff submits that despite the Defendants' appeals, an order can become "effective" before it becomes "final."

Because the Defendants missed twenty-five payments from February 2013 to February 2015 and the lump sum payment for back benefits that was due on April 3, 2013, the Plaintiff submits that they are responsible for an additional 20% compensation on the missed payments. In support of its argument, the Plaintiff cites to 33 U.S.C. § 914(f) and 20 C.F.R. §§ 725.607(a) and 725.530(a). The Plaintiff contends that although the Trust Fund made interim payments while the case was on appeal, this does not affect the Defendants' legal responsibility to pay the 20% additional compensation. The Plaintiff asserts that she is entitled to 20% of $52,676.50 or $10,535.30. In addition, the Plaintiff contends that pursuant to 20 C.F.R. § 725.608(a)(3), the Defendants owe interest on the additional compensation, which began to accrue on March 25, 2013. In addition, the Plaintiff asserts, "A lump-sum reimbursement was due on April 3, 2013. . . . Interest on that payment began to accrue on April 13, 2013." [Doc. 17 at 16].

Finally, the Plaintiff argues that its claims are both ripe and timely. The Plaintiff asserts that she is under no obligation to exhaust any administrative remedy and that § 921(d) of the Longshore Act provides a freestanding right of action for claimants to enforce a final award of benefits, including the 20% additional compensation. In addition, the Plaintiff asserts that she does not need to seek a supplementary order from the district director prior to bringing suit under § 921(d). The Plaintiff asserts that the claim is not barred by any statute of limitations.

The Defendants assert that Plaintiff requests the Court to impose a Longshore penalty provision on the adjudication of a black lung claim, which as applied here, punishes the Defendants for litigating this claim. The Defendants assert that 33 U.S.C. § 914(f) has no proper place when applied in the adjudication of a black lung claim and that it is punitive for no reason. The Defendants assert that the Plaintiff's request is time-barred or that no penalty is due. The Defendants explain that a plaintiff may seek to enforce an award through the district court by two

avenues: 33 U.S.C. § 918 or § 921.  The Defendants argue that § 918 has a one-year window, which would bar the instant suit.  The Defendants asserts that under § 921, the compensation order was not final until September 11, 2015, when the Sixth Circuit issued its mandate.  Thus, the Defendants assert that the Plaintiff does not seek to enforce a final order.

Further, the Defendants argue that the Department of Labor's departure from 33 U.S.C. § 914(f) is unlawful.  The Defendants explain that 20 C.F.R. § 725.607 is an unauthorized departure from the Longshore Act and the Black Lung Benefits Act. The Defendants argue that the provision is arbitrary and capricious.  The Defendants reason that Congress created the Trust Fund to pay benefits when a specific employer declined to do so in order to exercise an employer's right to contest a claim.  The Defendants argue that imposing a penalty on them for exercising the right to litigate and to decline to immediately pay benefits on a disputed claim is unconstitutional.  Finally, in a footnote, the Defendants assert that the Plaintiff "arguably lacks standing."

The Plaintiff filed a Reply [Doc. 22] starting that the Defendants do not contest that there is a genuine dispute as to any material fact and that 33 U.S.C. § 914(f) is one of the incorporated provisions from the Longshore Act.  Further, the Plaintiff asserts that the Defendants' argument with respect to standing is incorrect.  The Plaintiff argues that she is seeking its statutory compensation traceable to Defendants' failure to pay Mr. Byrge in a timely fashion.  Moreover, the Plaintiff argues that the Defendants failed to challenge the statute, 33 U.S.C. § 914(f), but instead argue that the regulation, 20 C.F.R. § 725.607, is unconstitutional.  The Plaintiff asserts that the Defendants did not request a stay and that the 20% additional compensation provision only comes into play if the employer loses a claim.  The Plaintiff asserts that it is not a penalty but an acknowledgement that the beneficiary deserves interim benefits and that the employers should avoid shifting the risk to the Trust Fund.  Further, the Plaintiff argues that the 20% additional

compensation is no different than many other litigation costs. With respect to the Defendants' due process concerns, the Plaintiff submits that their arguments are factually and legally wrong. The Plaintiff asserts that the claim is not time-barred and that the Plaintiff is entitled to interest under 20 C.F.R. § 725.608.

The Defendants filed a Notice of Supplemental Authorities [Doc. 24]. In the Notice, the Defendants submit that the United States Supreme Court granted certiorari in a case involving the rule of lenity or its companion canon of strict construction of penal statutes. Further, the Defendants assert that since they first raised the issue of standing, the Sixth Circuit issued an unpublished opinion, adopting an expansive view of the standing in the aftermath of *Spokeo Inc., v. Robins*, 136 S. Ct. 1540 (2016). After the hearing, both parties filed supplemental notices [Docs. 27, 29, 30].

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To

establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## IV.    ANALYSIS

As an initial matter, the Court notes that the Defendants have raised the issue of standing, albeit in a footnote. Because standing involves the jurisdiction of this Court, the Court must address this argument first. *See A.C.L.U. of TN v. Rutherford County, TN*, No. 3:09-cv-0396, 2006 WL 2645198, *7 (M.D. Tenn. Sept. 14, 2006) ("Standing is a jurisdictional requirement because if a plaintiff does not have standing to bring a claim, a federal court is without power to rule on the issues presented.").

## A. Standing

In a footnote, the Defendants submit, "Mrs. Byrge arguably lacks standing to pursue this lawsuit. She has not suffered an injury-in-fact, a basic requirement for Article III standing." [Doc. 19 at 17, n. 1]. The Defendants assert that whether a statute can "confer standing in the absence of any injury is an unresolved question." [*Id.* at 18, n. 1]. Later, the Defendants filed a Notice of Supplemental Authorities [Doc. 24], directing this Court to Sixth Circuit case law, although no analysis of the case law or how it relates to the instant case was provided.

The Plaintiff responds that she is not asserting a generalized grievance but rather is seeking the statutory compensation traceable to Defendants' failure to pay Mr. Byrge in a timely fashion. The Plaintiff asserts that the 20% additional compensation provision in 33 U.S.C. § 914(f) supplies a financial interest creating standing analogous to a qui tam provision.

The Court finds that the Plaintiff has standing to sue. In order to establish standing, a plaintiff must allege: (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992) (internal quotation marks and citations omitted). Here, the Plaintiff has alleged that the estate of Mr. Byrge is owed 20% additional compensation (injury in fact) and that the Defendants are obligated to pay the additional compensation because they failed to timely pay monthly benefits (causal connection). Further, the Plaintiff requests that the Court order the Defendants to pay the additional compensation (redressability). Accordingly, the Court finds that the Plaintiff has standing in this matter.

## B. Additional Compensation

The Plaintiff asserts that she is entitled to 20% additional compensation in the total amount of $10,535.30. The Plaintiff argues that she is entitled to such amount pursuant to 33 U.S.C. §

914(f) and that the Department of Labor's implementing regulations, 20 C.F.R. §§ 725.607(a) and

725.530(a), make clear that § 914(f) applies in the context of black lung benefits. The Defendants

respond that the Plaintiff's request for additional compensation is either time-barred under 33

U.S.C. § 918 or is not due under 33 U.S.C. § 921. Further, the Defendants submit that the

Department of Labor departed from § 914(f) in implementing 20 C.F.R. § 725.607. Accordingly,

the Court will first discuss the provisions at issue and then address the parties' specific arguments.

At the outset, the Court notes that this case involves interpretation of the Longshore and

Harbor Workers' Compensation Act ("LHWCA") and the Black Lung Benefits Act ("BLBA").

"The BLBA established a comprehensive schedule designed to compensate miners for medical

problems and disabilities related to pneumoconiosis." *Nowlin v. Eastern Associated Coal Corp.*,

331 F. Supp. 2d 465, 469 (N.D. W.Va. 2004) (quoting *Kinder v. Coleman & Yates Coal Co.*, 974

F. Supp. 868, 870 (W.D. Va. 1993)) (other citations omitted). The BLBA incorporates significant

portions of the LHWCA, including the disputed provision at issue, 33 U.S.C. § 914(f). *See* 30

U.S.C. § 932(a) (noting that provisions, except the statutes explicitly listed, shall be applicable to

each operator of a coal mine);[2] *see also Combs v. Elkay Min. Co.*, 881 F. Supp. 2d 728, 731 (S.D.

W.Va. 2012) (noting that the BLBA's "complexity and lack of clarity derive in part from its

incorporation of the" LHWCA).

Section 914(f) provides as follows:

> **(f) Additional compensation for overdue installment payments payable under terms of award**
> If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order

---

[2] In their brief, the Defendants acknowledge that § 914(f) is one of the provisions that is incorporated from the LHWCA. [Doc. 19 at 4].

making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

Pursuant to 30 U.S.C. § 932(a), the Secretary of Labor is

authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part and thereafter those provisions shall be applicable to such operators.

In exercising the above authority, the Secretary of Labor has promulgated 20 C.F.R. § 725.607, which provides as follows:

(a) If any benefits payable under the terms of an award by a district director (§ 725.419(d)), a decision and order filed and served by an administrative law judge (§ 725.478), or a decision filed by the Board or a U.S. court of appeals, are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there will be added to such unpaid benefits an amount equal to 20 percent thereof, which must be paid to the claimant at the same time as, but in addition to, such benefits, unless review of the order making such award is sought as provided in section 21 of the LHWCA and an order staying payments has been issued.

In addition, 20 C.F.R. § 725.607(b) provides that the eligible claimant is still entitled to receive additional compensation despite benefit payments made by the Trust Fund. The regulation also provides that the Trust Fund "may not be held liable for payments of additional compensation under any circumstances." 20 C.F.R. § 725.607(c). Section 725.530 of the Code of Federal Regulations provides, in part, "In addition, a claimant who does not receive any benefits within 10 days of the date they become due is entitled to additional compensation equal to twenty percent of those benefits (see § 725.607)."

Section 914(f) does not provide an enforcement mechanism. *See Nowlin v. Eastern Associated Coal Corp.*, 266 F. Supp. 2d 502 (N.D. W.Va. 2003) ("Section 914(f) does not, however, specifically provide for the issuance or enforcement of a penalty award.").

11

Compensation orders may only be enforced through 33 U.S.C. §§ 918 or 921. *See* 33 U.S.C. § 921(e) (noting that enforcing a compensation order shall not be instituted otherwise than as provided in §§ 918 or 921); *see also Combs*, 881 F. Supp. 2d at 732 (explaining that § 914(f) needs a § 918 or § 921 proceeding to be given effect); and *Rogers v. Army/Air Force Exchange Service*, No. 3:04-cv-2403, 2005 WL 1837950, *4 (N.D. Texas July 28, 2005) ("A district court may enforce an effective award of benefits under § 918(a), and a district court may award a final award of benefits under § 921(d)."). Section 921(d) provides as follows:

> **(d) District court; jurisdiction; enforcement of orders; application of beneficiaries of awards or deputy commissioner; process for compliance with orders**
> If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred (or to the United States District Court for the District of Columbia if the injury occurred in the District). If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

With the above analysis in mind, the Court will now address the parties' arguments. Specifically, the Defendants have raised three primary issues in their Response: (1) Whether the Plaintiff may proceed with its claim under 33 U.S.C. §§ 918 or 921, (2) when did the compensation order become effective and/or final, and (3) whether the Secretary of Labor unlawfully departed from § 914(f) when promulgating 20 C.F.R. § 725.607.

### 1. *Whether Plaintiff may proceed with its lawsuit?*

The Plaintiff asserts that the decision to award benefits became effective when it was filed with the office of the district director, or February 14, 2013. The Plaintiff asserts that monthly

benefits were due on the fifteenth day of the month following the month for which benefits were payable, *i.e.,* March 15, 2013. The Plaintiff states that because the Defendants failed to pay monthly benefits and the lump-sum payment for back benefits, the Defendants now owe 20% additional compensation.

The Defendants assert that the Complaint does not seek enforcement of a final compensation order under 33 U.S.C. § 921. The Defendants argue that the Department of Labor did not issue its compensation order until October 28, 2015, and they complied with that order within ten days of receipt. The Defendants assert that there is no final order that has not been paid.[3]

"By explicit statutory provisions, [§§ 918 and 921] are the sole means of enforcing compensation awards." *Henry v. Gentry Plumbing & Heating,* 704 F.2d 863, 864, n.1 (3d Cir. 1983) (citing 33 U.S.C. § 921(e)). The Plaintiff acknowledged at the hearing that she was not proceeding under 33 U.S.C. § 918. Instead, the Plaintiff is proceeding pursuant to 33 U.S.C. § 921(d). Section 921(d) provides, "If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court." The Court reads § 921(d) as a procedural mechanism that allows beneficiaries to obtain relief in federal court after a compensation order has become final, *i.e.*, when the parties have exhausted all administrative appeals. To put simply, §§ 918 and 921 provide *when* a beneficiary may seek to enforce a compensation award. *See Nowlin*, 266 F. Supp. 2d at 508 ("While § 918 permits enforcement of effective, but not-yet-final awards, § 921 permits the

---

[3] The Court notes that the Defendants argued in their brief that the Plaintiff's suit is untimely if brought pursuant to 33 U.S.C. § 918. However, the Plaintiff acknowledged during the hearing that the lawsuit was brought under 33 U.S.C. § 921(d). Thus, the Court will not address Defendants' arguments with respect to 33 U.S.C. § 918.

enforcement of final awards."); *see also* 20 C.F.R. § 725.604 ("[I]f an operator . . . fails to comply with an order awarding benefits that has become final, any beneficiary of such award or the district director may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred.").

At the hearing, the Defendants argued that the "final compensation order" is the October 28, 2015, letter to the Defendants. The Defendants asserted that pursuant to § 921(d), the Plaintiff did not have a claim because they timely paid benefits pursuant to the October 28 letter. The Court finds this interpretation inconsistent with the language in the statutes. For instance, "compensation order" is defined in 33 U.S.C. § 919. Specifically, § 919(b) and (c) discuss the duties of the deputy commissioner and the ALJ.[4] These sections state that the deputy commissioner or the ALJ "shall, by order, reject the claim or make an award in respect of the claim." 33 U.S.C. § 919(c). Section § 919(e) provides, "The order rejecting the claim or making the award (referred to in this chapter as a compensation order) shall be filed in the office of the deputy commissioner, and a copy thereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each."[5]

In the present matter, the Court finds that the "compensation order" in this case is the ALJ's January 16, 2013, Decision and Order, which is the order "making the award." 33 U.S.C. § 919(e). While the compensation order does not become effective or final at the time the ALJ issues his/her decision, as discussed below, it is still a "compensation order" as defined in the statute. Although the Defendants insist that the compensation order is the October 28, 2015 letter, the Court disagrees. The October 28 letter, along with the March 4, 2013 letter, are simply letters calculating

---

[4] Deputy commissioners are now called district directors. *See* 20 C.F.R. §§ 701.301(a)(7), 702.105.

[5] Pursuant to 20 C.F.R. § 725.502(a)(2), the district director's order becomes effective after thirty days if no party appeals. An ALJ's order becomes effective when it is filed in the district director's office.

the specific amount owed—they do not make the award as "compensation order" is defined in 33 U.S.C. § 919(e). *See Navalo v. Conchise Consultancy, Inc.*, 666 F. App'x 661 (9th Cir. 2016) ("Once the ALJ's ruling disposes of all the outstanding legal issues, the district director's role is 'purely ministerial and administrative.'"). (Quoting *Cornelius v. Drummond Coal Co.*, 9 Black Lung Rep. 1-40 (Ben. Rev. Bd. 1986)); *see also* 20 C.F.R. § 725.502 (discussing the district director's duty to compute the amount of benefits payable prior to the effective date of the order, in addition to any interest, and explaining that "[a]ny computation made the by district director . . . shall strictly observe the terms of the order").

The Defendants state that 20 C.F.R. § 725.502(b)(2) has been interpreted as requiring payment of benefits "when an order requiring payment is issued by the district director." [Doc. 30 at 1] (citing *National Mining Ass'n v. Chao*, 160 F. Supp. 2d 47, 82 (D.D.C. 2001)*, aff'd in part, rev'd in part,* 292 F.3d 849 (D.C. Cir. 2002)). The Defendants argue that such interpretation makes sense because an employer cannot pay benefits when it does not know what benefits are due and that the "applicable black lung regulations assign the compensation order function exclusively to administrative personnel." The Defendants' argument, however, misses the point. When the ALJ issued his decision granting benefits, the Defendants were not required to immediately start paying some unknown amount. As explained below, the ALJ's compensation order does not become effective until it is filed with the district director. 33 U.S.C. § 921(a), 20 C.F.R. § 725.479(a). As noted above, 20 C.F.R. § 502(b)(2) provides that the district director has thirty days after the issuance of an order to compute the amount and notify the parties. Further, § 725.502(b)(2) states, "Any computation by the district direct under this paragraph shall strictly observe the terms of the order." This sentence would be unnecessary if the district director's computation was also the compensation order.

Finally, while the ALJ's compensation order does not reference the 20% additional compensation, and the March 4 and October 28 letters do reference the additional compensation, the Court notes that the additional compensation in § 914(f) has been described as "automatic." *See Hudson v. Pine Ridge Coal Co., LLC*, No. 2:11-cv-248, 2012 WL 386736, *5 (S.D. W.Va. Feb. 6, 2012) ("A right to [§ 914(f)] compensation arises automatically when the above conditions are met—that is, no additional award or order is required."); *Combs*, 881 F. Supp. 2d at 732 ("Courts have held that under the LHWCA, § 914(f) is self-executing; the 20 percent additional compensation automatically becomes due immediately upon the expiration of the ten-day period following the filing of the compensation order with the deputy commissioner."). Accordingly, the Court finds that the "compensation order" is the ALJ's January 16, 2013, Decision and Order, and that the Plaintiff's lawsuit may proceed pursuant to 33 U.S.C. § 921(d), as the ALJ's decision has now become final.

### 2. *When did the compensation order become effective?*

In the Defendants' brief, they assert that the Plaintiff does not dispute that the "relevant trigger for enforcement of [its] claim is September 11, 2015," and that Mr. Byrge's case did not become final until September 11, 2015, when the Sixth Circuit issued its mandate. [Doc. 19 at 13-14]. The Defendants assert that they were not obligated to pay before that time. The Plaintiff argued at the hearing that the compensation order becomes effective when it is filed and the filing creates the obligation to pay.

Section 921(a) states that "[a] compensation order shall be effective when filed in the office for the deputy-commissioner as provided, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subsection (b) of this section, shall become final at the expiration of the thirtieth day thereafter." The "'proceedings . . . provided in subsection (b)'

are appeals to the Benefit Review Board." *Hudson,* 2012 WL 386736 at *4 (citing 33 U.S.C. § 921(b)). Further, § 921(b)(3) states, "The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensure to the employer or carrier." A similar statement is made in § 921(c), "The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the court. . . No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier." *See also Combs.,* 881 F. Supp. 2d at 731 ("An award is effective when it is filed in the office of the District Director."). The "concepts of effectiveness and finality are distinct; although an appeal delays an order's finality, it does not prevent the order from becoming effective." *See Nowlin*, 331 F. Supp. 2d at 472 (describing the director's interpretation and adopting it); *see also Lazarus v. Chevron U.S.A., Inc.,* 958 F.2d 1297, 1299 (5th Cir. 1992) (noting that a "compensation order becomes final thirty days after it is filed in the office of the deputy commissioner, or in the event a party appeals the order to the Benefits Review Board, when the Board makes a decision which resolves the merits of the administrative proceeding") (citing 33 U.S.C. § 921(a)).

The Court finds the § 921(a) is clear in that a compensation order becomes effective when it is filed with the district director. Here, the ALJ's decision became effective when it was filed, which in this case occurred on February 14, 2013. Accordingly, the Court finds that the Defendants were required to start paying benefits because the ALJ's Order became effective and they did not receive, let alone request, a stay of the ALJ's decision granting benefits.

Further, the Defendants repeatedly claim that such interpretation punishes them for continuing to litigate the claim. The Court disagrees. First, if the Defendants prevail in their continued litigation, they will not owe the Plaintiff—hence, no punishment. Second, if they had

sought and received a stay order, they would not have had to pay the additional compensation for non-payment.  Third, once an award was made for the Plaintiff, the Defendants had to engage in a risk analysis, *i.e,* whether to hold onto the award money and not pay it to Plaintiff and instead continue to litigate (and continue to earn interest on the unpaid amount) and have the Trust Fund pay the Defendants' obligation, all with hopes of prevailing eventually, or not to run a risk of the additional 20% award by paying the award now (or seeking a stay) and still continue to litigant with the risk of over recovery for the miner if the Defendants ultimately prevail. Defendants chose the former and cannot now be heard to complain because they were deemed to have no basis for not paying the award back in 2013.

 3. *Whether the Secretary of Labor unlawfully departed from 33 U.S.C. § 914(f)?*

The Defendants have also challenged the additional compensation as described in § 914(f) and 20 C.F.R. § 725.607.  Specifically, the Defendants argue that § 725.607 is an unlawful departure from § 914(f).

As noted above, § 914(f) provides that an employer shall pay 20% additional compensation on any compensation that becomes due and is not paid within ten days, unless an employer has appealed the compensation order and a stay has been issued.  Although the Defendants have challenged the regulation, they acknowledge, however, that § 914(f) is an incorporated provision from the LHWCA. [Doc. 19 at 4].  The Defendants contend that § 914(f) does not make sense when applied in the adjudication of a black lung claim prior to the issuance of a final award.  The Defendants reason that § 914(f) operates to ensure injured workers are not required to wait for compensation during an appeal, but in the context of a black lung claim, the Trust Fund makes interim payments to the claimant.  Further, the Defendants assert that its application forces an employer to pay unrecoverable benefits in contested claims.

"Congress passed the [BLBA] and created the Black Lung Disability Trust Fund to provide benefits for miners and their survivors when a miner is killed or disabled by pneumoconiosis." *Arkansas Coals, Inc. v. Lawson*, 339 F.3d 309, 312 (6th Cir. Jan. 9, 2014) (citing 30 U.S.C. § 901). Section 914(f) is designed to "ensure that individual coal operators rather than the trust fund bear the liability for claims arising out of such operators' mines to the maximum extent feasible." *Old Ben Coal Co. Luker,* 826 F.2d 688, 693 (7th Cir. 1987) (quoting S. Rep. 95-209, 95th Cong. 1st Sess., 9 (1977)).[6]

First, the Defendants have acknowledged that § 914(f) is incorporated into the BLBA. While the Defendants argue that § 914(f) does not make sense in the context of black lung benefits, the proper recourse for any perceived inadequacies in a statute is through the legislative branch, not the judiciary. Second, while the Defendants assert that § 914(f) forces employers to pay on contested claims, the Court notes that the statute explicitly provides that the additional compensation will not be provided if the employer is granted a stay. *See* 33 U.S.C. 914(f). The Defendants admitted in their Answer that they did not request a stay. *See* Answer ¶ 15 ("Defendants admit that they did not apply for or receive a stay of the ALJ's decision and order pending appeal."). Accordingly, the Defendants' position is not well-taken.

The Defendants have challenged 20 C.F.R. § 725.607 by arguing it is an unlawful departure of 33 U.S.C. § 914(f). As stated above, 20 C.F.R. § 725.607(a) provides 20% additional compensation on unpaid benefits, pursuant to a decision and order filed and served by the ALJ, if they are not paid within ten days of becoming due. Section (b) explains that the additional compensation is to be paid to the eligible claimant, "with respect to all amounts paid by the fund on behalf of such operator or employer." The Defendants assert that nothing in § 914(f) imposes

---

[6] At the hearing, the Defendants argued that the Trust Fund was created because the mining operators struck a deal with Congress, but they could not point to any authority for their allegation.

an obligation on an employer to pay the additional compensation where a claimant has been already paid, even though payments were made by the Trust Fund.

As an initial matter, § 914(f) was promulgated as part of the LHWCA. The LHWCA does not contain a fund to provide injured employees payments when an employer refuses to pay, so there would be no reason to add such language to § 914(f). Section 20 C.F.R. § 725.607 mirrors § 914(f) and only adds that the additional compensation still applies although the Trust Fund pays the claim. "[A]n agency must interpret its implementing legislation in a reasonable manner and may not 'promulgate regulations in a manner that are arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Bowman v. United States*, 564 F.3d 765, 769 (6th Cir. 2008) (quoting *Clark Reg'l Med. Ctr. v. United States Dep't of Health & Human Services,* 314 F.3d 241, 244–45 (6th Cir. 2002)). Further, "[w]here Congress empowers an agency to enact rules and regulations necessary to carry out an Act, those regulations are to be upheld 'so long as [they are] reasonably related to the purposes of the enabling legislation.'" *Id.* (quoting *Jackson v. Richards Med. Co.,* 961 F.2d 575, 585 (6th Cir. 1992)) (other citations omitted).

The Defendants assert that the Trust Fund was created, in part, to be fair to employers who are entitled to a full and fair adjudication but that § 725.607 punishes employers for exercising those rights. The Defendants have not cited any support for their allegation that the Trust Fund was established for the benefit of employers. To the contrary, and to this Court, all indications are that it was created to benefit the miner—to allow him/her a paid benefit if the employer refused to pay, was unable to pay, or continued to litigate without paying. Regardless, coal mine operators are afford protection from the additional compensation while seeking an appeal in the form of a stay. Here, the Defendants acknowledge that they did not even request a stay and claimed, without any legal support, at the hearing that "no one" gets a stay. This allegation is an insufficient ground

to rule § 725.607 unconstitutional. *See Hudson,* 2012 WL 386736 at *6 (noting that the coal company had not challenged the dispositive regulation, § 725.607, "[n]or could it," as the "law imposes a heavy burden on employers challenging the validity of a regulation promulgated under a statute, such as the BLBA, that provides a broad grant of rulemaking authority") (other citations omitted).

The Court agrees with the Plaintiff in that the purpose of the additional compensation is to discourage employers from shifting the risk to the Trust Fund and that the Secretary of Labor's enactment § 725.607 was reasonably related to the purpose of the statute. *See Arkansas Coals Inc.,* 739 F.3d at 313 (stating that "[t]o ensure that the fund does not bear the sole burden of black lung claims, the Department of Labor . . ., following congressional authorization, established regulations to ensure that coal mine operators are liable "to the maximum extent feasible" for awarded claims") (quoting *Director, OWCP v. Oglebay Norton Co.,* 877 F.2d 1300, 1304 (6th Cir. 1989)) (internal quotation marks and citations omitted).

The Defendants also assert that "when the district director announces its decision, the employer is pretty much in the dark." [Doc. 29 at 15]. This allegation, however, is not accurate. As emphasized by the Plaintiff, while Mr. Byrge's claim was pending with the district director, the Defendants were obviously provided with notice of the claim because they sent Mr. Byrge to a physician for an examination. [Doc. 19-1 at 10]. Furthermore, as the Plaintiff has argued, the district director's 2011 decision was not an "effective order" that resulted in the 20% additional compensation. Instead, the compensation order is the ALJ's 2013 decision that was filed with the district director. *See* 20 C.F.R. § 725.502(a)(1)(2) (noting that a proposed order by a district director becomes effective at the expiration of the thirtieth day thereafter if no party timely requests

a hearing and that an order issued by an ALJ becomes effective when it is filed with the district director).  The ALJ conducted a hearing and the Court finds no due process violation.

Further, the Defendants assert that the additional compensation operates as a penalty in the black lung context. The Court notes that the term "penalty" is missing from § 725.607. Instead, similar to § 914(f), the 20% is referred to as "additional compensation." *See also Newport News Shipbuilding and Dry Dock Co. v. Brown*, 376 F.3d 245, 249 (4th Cir. 2004) ("Further, the Court noted that § 914(f) "does not contain the word fine or penalty, and it directs payment to the injured employee."); *see also Tahara v. Matson Terminals*, *Inc.*, 511 F.3d 950, 953 (9th Cir. 2007) (noting that the plain language supports that a § 914(f) late payment award is compensation and not a penalty).  Furthermore, the Defendants' argument is undermined in that they were allowed to request a stay while they sought an appeal and failed to do so.  Accordingly, the Court finds the Defendants' position not well-taken.

### C.  Interest

The Plaintiff asserts that she is entitled to interest on the unpaid additional compensation pursuant to 20 C.F.R. § 725.608(a)(3).  The Plaintiff asserts that the right to additional compensation arises ten days after the payment becomes due and that payments were due on the fifteenth of each month from March 2013 to February 2015. The Plaintiff asserts that interest on those payments thus began to accrue on the twenty-fifth of each month from March 2013 to February 2015.  The Defendants respond, albeit in a footnote, that the "request for interest is improper in the absence of any determination that such a penalty was due." [Doc. 19 at 13, n. 1]. The Defendants contend that the March 2013 pay order did not order them to pay additional compensation but only stated that the failure to initiate benefits may subject them to a penalty up

to 20% of the amount due. The Defendants cite *Youghiogheny and Ohio Coal Co v. Warren*, 841 F.2d 134 (6th Cir. 1987) for the assertion that prejudgment interest is prohibited under the BLBA.

In *Warren*, the deputy commissioner made an initial determination on May 23, 1980, that the claimant was eligible for black lung benefits as of January 1, 1980. *Id.* at 135. The Benefit Review Board awarded prejudgment interest for a period commencing January 1, 1980, when the claimant became eligible for benefits. *Id.* The question on appeal was whether the claimant was entitled to interest from the date of his eligibility (January 1, 1980) or the date of the initial determination (May 23, 1980). *Id.* 138-39. The Sixth Circuit held that "§ 725.608(a) requires payment of interest only from the initial determination date." *Id.*

With respect to the Defendants' argument—that is, there was no determination that a penalty is due—as noted above, "§ 914(f) is self-executing; the 20 percent additional compensation automatically becomes due immediately upon the expiration of the ten-day period following the filing of the compensation order with the deputy commissioner." *Combs,* 881 F. Supp. 2d at 732. Accordingly, the Defendants' contention is not well-taken.

Further, the Defendants argue that "where interest is statutory, as it is under the black lung program, a specific statutory authorization is required and there is none with respect to any amount owed under section 914(f)." [Doc. 19 at 13, n. 4]. Specifically, the Plaintiff has requested interest on the additional compensation pursuant to 20 C.F.R. § 725.608. This regulation provides as follows:

> (3) In any case in which an operator is liable for the payment of additional compensation (§ 725.607), the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose.

20 C.F.R. § 725.608. The Court notes that pursuant to 30 U.S.C. § 932(d): "With respect to payments withheld pending final adjudication of liability, in the case of claims filed on or after the

effective date of the Black Lung Benefits Amendments of 1981, such interest shall commence to accumulate 30 days after the date of the determination that such an award should be made." *See also Hudson*, 2012 WL 386736 at *7 (awarding the claimant an additional 20% on all overdue payments under § 914(f) in a black lung claim, plus interest pursuant to § 725.608).

Accordingly, the Defendants' position is not well-taken and that the Plaintiff is entitled to interest but only on the additional compensation (*i.e.,* the 20%) from March 25, 2013,[7] to February 23, 2015, when Mr. Byrge passed away, being interest on the $10,553.00.

As a final matter, the Court notes that it is unclear if the Plaintiff is requesting interest on the lump-sum payment (and not additional compensation) that became due on April 3, 2013, because she asserts that interest on the lump sum became due on April 13, 2013. [Doc. 17 at 16]. To be clear, however, the Plaintiff is not entitled to interest on any payments that the Trust Fund has paid because only the Trust Fund is entitled to such interest payments. *See* 20 C.F.R. § 725.608(b).[8] The Plaintiff is only entitled to interest on the additional compensation as explained above.

## V. CONCLUSION

Accordingly, for the reasons explained above, the Plaintiff's Motion for Summary Judgment [**Doc. 17**] is **GRANTED.** A separate judgment will enter.

ORDER ACCORDINGLY:
    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[7] The compensation order became effective when it was filed with the district director's office, or February 14, 2013. *See* 20 C.F.R. § 725.502(a)(2). Monthly benefits were due the fifteenth day of the month following the month for which benefits are payable, or March 15, 2013. *See* 20 C.F.R. § 725.502(b)(1). If benefits are not paid within ten days, or March 25, 2013, there will be added to such unpaid benefits an amount equal to 20%. *See* C.F.R. § 725.607(a). The interest is to be calculated "from the date upon which the beneficiary's right to additional compensation first arose." *See* 20 C.F.R. § 725.608(a)(3).

[8] In a letter to Mr. Byrge dated March 4, 2013, the DOL stated that the Trust Fund would pay $9,383.00 in retroactive benefits. *See also* 20 C.F.R. § 725.607(c) (noting that the Trust Fund may not be held liable for additional compensation).